288 P.3d 775

**STATE of Arizona, Appellee,**

v.

**Damon Paul McLEMORE, Appellant.**

**No. 1 CA–CR 08–1103.**

Court of Appeals of Arizona, Division 1, Department E.

Nov. 30, 2012.

Thomas C. Horne, Arizona Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section and Sarah E. Heckathorne, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Bruce F. Peterson, Office of the Legal Advocate By Consuelo M. Ohanesian, Deputy Legal Advocate, Phoenix, Attorneys for Appellant.

## OPINION

KESSLER, Judge.

¶ 1 Damon Paul McLemore ("McLemore") appeals from his convictions of six felonies.[1] Pursuant to our order, the parties filed briefs addressing whether fundamental error occurred when the trial court failed to conduct a hearing on McLemore's request to waive his right to be represented by an attorney and to represent himself. *See Faretta v. California,* 422 U.S. 806, 818–19, 821, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). As a matter of first impression, we hold that while the court failed to conduct a hearing on McLemore's *Faretta* request, on the facts of this case McLemore abandoned that request when he never reminded the court of the pendency of his request so that the court could rule on it. *See People v. Kenner,* 223 Cal.App.3d 56, 62, 272 Cal.Rptr. 551 (1990) (holding that when defendant had both the time and opportunity to follow up on a *Faretta* motion but failed to do so, the motion is deemed abandoned). If and when failures to hold *Faretta* hearings occur, we must examine the totality of the circumstances to determine whether the defendant intended to abandon his or her *Faretta* motion. Our review of the record confirms that McLemore intended to abandon his *Faretta* motion. After reviewing the entire record, we also conclude the evidence is sufficient to support the verdicts and sentences, McLe-

more had a fair trial, and there is no reversible error.

## FACTUAL AND PROCEDURAL HISTORY [2]

¶ 2 McLemore was indicted for first degree murder, armed robbery, three counts of aggravated assault, and first degree burglary based on his participation in an armed robbery of a jewelry store.

¶ 3 During the robbery, the store owner and two employees fled out the rear exit of the store and tried to shut and lock the door behind them. The front door was already locked and successfully locking the back door would have trapped McLemore and his accomplice in the store. McLemore and his accomplice followed the owner and employees out of the store and a shoot out between the victims and McLemore and his accomplice began. Ultimately, one employee was wounded and the store owner shot and killed one of the accomplices.

¶ 4 McLemore was charged with one count of first degree murder, a class 1 dangerous felony (Count 1), one count of armed robbery, a class 2 dangerous felony (Count 2), three counts of aggravated assault, class 3 dangerous felonies (Counts 3–5), and one count of first degree burglary, a class 3 dangerous felony (Count 6).

¶ 5 The jury found McLemore guilty of all offenses and also found each to be dangerous. McLemore was sentenced to concurrent presumptive terms for each dangerous non-repetitive offense: life imprisonment with the possibility of parole after 25 years (Count 1); 10.5 years' imprisonment (Count 2); 7.5 years' imprisonment (Counts 3–5); and 7.5 years' imprisonment (Count 6). Ariz. Rev.Stat. ("A.R.S.") §§ 13–704(A) (2010),–751(A) (2010), –752(A) (2010), –1105(D) (2010).[3] McLemore received 517 days' presentence incarceration credit.

---

1. Pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Clark,* 196 Ariz. 530, 2 P.3d 89 (App.1999), McLemore's counsel found no arguable issues to raise and requested that this Court search the record for fundamental error. McLemore was given the opportunity to file a *pro se* supplemental brief, which he did not file.

2. The procedural history relating to McLemore's request to represent himself is discussed at Section II(A).

3. We cite the current version of the applicable statutes when no revisions material to this decision have since occurred.

¶ 6 McLemore timely appealed. This Court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) (2003) and 13–4033(A)(1) (2010).

## DISCUSSION

### I. McLemore received a fair trial and there is no reversible error.

¶ 7 After reviewing the entire record, we find no meritorious grounds for reversal of McLemore's convictions or modification of the sentences imposed. The record reflects McLemore had a fair trial. With the exception of McLemore's request to represent himself, which we discuss below, the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure.

¶ 8 The evidence supports each of the convictions. It is sufficient to affirm the conviction for first degree felony murder because evidence established that McLemore and an accomplice robbed a jewelry store and during the immediate flight from the robbery, the accomplice was shot by the store owner and died from his wounds. See A.R.S. §§ 13–1902, –1904 (2010), –1105(A)(2) (defining robbery and felony murder). The evidence also supports the conviction for armed robbery because testimony and security footage demonstrated that McLemore brandished a firearm and took jewelry from the store while he was in the immediate presence of the store owner and staff. See A.R.S. §§ 13–1902, –1904 (defining armed robbery involving a deadly weapon or a use or threatened use of the weapon).

¶ 9 There was also sufficient evidence for the jury to convict McLemore of three aggravated assaults because the evidence shows he shot one victim, shot at the store owner, and pointed a gun at the third victim. See A.R.S. §§ 13–1204(A)(2), –1203(A)(1) (2010) (defining the elements of causing physical injury to another by using a deadly weapon). Both the owner and the employee who had been shot testified that the other employee appeared afraid while McLemore pointed the gun at him. Given that McLemore had already recklessly fired a shot that struck one employee, and fired a shot at the store owner while McLemore was fleeing the scene, a reasonable jury could conclude that pointing a gun at the employee placed the employee in reasonable apprehension of imminent physical injury.

¶ 10 Finally, the trial testimony as well as photographic evidence was sufficient to convict McLemore of first degree burglary. The evidence established that McLemore crossed a counter during the robbery, and that the area behind the counter was not open to the public and normally only used by employees. Therefore, a reasonable jury could conclude that McLemore was armed with a deadly weapon and remained unlawfully in the store with the intent to commit robbery. See A.R.S. §§ 13–1508(A) (2010), –1506(A)(1), –1501(2) (2010) (defining first degree burglary as commission of a burglary while knowingly possessing a deadly weapon).

### II. McLemore's request to represent himself.

#### A. Procedural history.

¶ 11 McLemore was represented by appointed counsel from the Office of the Maricopa County Public Defender.[4] In late October 2007, nearly one year prior to trial, McLemore filed a "Notice to Proceed as Pro Per," citing Rule 6 of the Arizona Rules of Criminal Procedure ("Rule 6"). In addition, McLemore's motion requested the assistance of advisory counsel, a ballistic expert and a weapons expert to assist in his pro se defense. A distribution list accompanying McLemore's motion indicates that personnel at the Fourth Avenue Jail delivered the motion to the Clerk of the Maricopa County Superior Court and the judge then presiding over McLemore's case.[5] The jail distribution list indicates that McLemore also mailed a copy of his motion to the prosecutor, and to a defense attorney at the Office of the Legal Advocate who had been representing his co-

---

4. This attorney continued to represent McLemore throughout trial.

5. As will be made clear below, the judge who eventually presided over the trial and sentencing is different than the judge at the earlier proceedings dealing with the *Faretta* motion.

defendant, but had been replaced by private counsel by the time McLemore filed his motion. McLemore's motion designated the intended recipients including the prosecutor and the superior court judge, but stated: "defense counsel none appointed" with respect to his own defense attorney. There is no indication in the record whether McLemore's appointed counsel, then employed by the public defender, received or ever knew about the motion.

¶ 12 For a reason not revealed by the record, the superior court did not set or hold a hearing on McLemore's motion. The next time McLemore appeared before the court was about three weeks after filing his motion, in early November, when a brief status conference was held. McLemore and his attorney were present, but his motion was not discussed, he was not personally addressed, nor did he speak during the conference. The next status conference was in January 2008 and the brief discussion at that conference pertained only to reaffirming the trial date. Again, the pending motion was not mentioned. A week later, the judge presiding over McLemore's case recused himself by minute entry and the case was assigned to another judge. In February 2008, McLemore's case was again reassigned after his co-defendant noticed a change of judge.

¶ 13 At the end of August 2008, approximately ten months after McLemore filed his motion to proceed *pro se* and about a month and a half before trial, his appointed counsel filed a motion to determine counsel, given a potential conflict of interest that had come to light when McLemore's counsel joined the Office of the Legal Advocate. After a brief hearing during which McLemore was present but did not speak, the court authorized appointed defense counsel to continue representing McLemore. No one alerted the judge that McLemore's motion to represent himself was pending. At no time before or during trial did McLemore request a ruling on his pending motion or affirmatively say he was abandoning that motion. Nor did McLemore or his counsel raise this issue on appeal.

## B. McLemore's right to self-representation.

¶ 14 Among other fundamental constitutional rights, two mutually exclusive rights are guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution: the right to effective representation by counsel, and the right to self-representation. *Faretta*, 422 U.S. at 818, 821, 95 S.Ct. 2525 (stating self-representation is "part of the 'due process of law' that is guaranteed by the Fourteenth Amendment" and the Sixth Amendment "implies a right of self-representation"); *State v. Lamar*, 205 Ariz. 431, 435–36, ¶ 22, 72 P.3d 831, 835–36 (2003). The right to self-representation is also explicitly guaranteed in Article 2, Section 24, of the Arizona Constitution. *State v. Cornell*, 179 Ariz. 314, 324, 878 P.2d 1352, 1362 (1994); *State v. Martin*, 102 Ariz. 142, 144–45, 426 P.2d 639, 641–42 (1967) (constitution "vest [s] in a defendant the 'explicit' right to defend himself"). The Arizona Rules of Criminal Procedure provide mechanisms for asserting and waiving the corollary rights. Reflecting its constitutional underpinnings, Rule 6 prescribes: "[a] defendant may waive his or her rights to counsel ... in writing, after the court has ascertained that he or she knowingly, intelligently and voluntarily desires to forego them." Ariz. R.Crim. P. 6.1(c); *see also* Ariz. R.Crim. P. Form 8 ("Notice of Right to Counsel and Waiver").

¶ 15 A finding that a defendant waived the right to counsel and a decision denying a defendant the right to proceed *pro se* are reviewed for an abuse of discretion. *State v. Gunches*, 225 Ariz. 22, 24, ¶ 8, 234 P.3d 590, 592 (2010) (finding of waiver); *State v. Binder*, 170 Ariz. 519, 520, 826 P.2d 816, 817 (App.1992) (finding abuse of discretion in denial of right to self-representation).[6] "A court's refusal or failure to exercise its discretion may be treated as an abuse of discretion." *State v. Garza*, 192 Ariz. 171, 175, ¶ 16, 962 P.2d 898, 902 (1998). However, regardless of the standard of review, an erroneous failure to accord a defendant his properly asserted right to represent himself when

---

6. We note both parties argue that there is no settled standard of review governing a defendant's waiver of counsel, citing *Cornell*, 179 Ariz. at 321, 878 P.2d at 1359.

he is competent to waive counsel in a criminal case is structural error requiring reversal without a showing of prejudice. *State v. Torres*, 208 Ariz. 340, 343–44, ¶ 11, 93 P.3d 1056, 1059–60 (2004) (citing *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (stating that erroneous denial of self-representation at trial is structural error)); *State v. Ring*, 204 Ariz. 534, 552, ¶ 46, 65 P.3d 915, 933 (2003) ("Ring III") (citing *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)); *United States v. Plattner*, 330 F.2d 271, 273 (2d Cir.1964) (noting court would be required to reverse and remand even if no prejudice were shown from the refusal to permit defendant to act *pro se* ).

■ ¶ 16 Both the right to counsel and the right to self-representation are fundamental notwithstanding the fact that the right of self-representation may be exercised only after a determination that the defendant knowingly, intelligently, and voluntarily waived the right to counsel. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525; *State v. Rigsby*, 160 Ariz. 178, 182, 772 P.2d 1, 5 (1989); *State v. De Nistor*, 143 Ariz. 407, 412, 694 P.2d 237, 242 (1985). It is in this sense that these two rights must yield to one another so both retain respect and neither is rendered illusory, particularly given their unique relationship. *See Martin*, 102 Ariz. at 144–45, 426 P.2d at 641–42 (stating rights are "of 'equal stature' [but] extreme caution must nevertheless be exercised before recognizing an assertion of the right to defend one-self as a waiver of the right to counsel").

■ ¶ 17 However, the corresponding rights have been treated differently under the law. In addition to differences in notice to the defendant,[7] the chief difference deals with invocation of the right to proceed *pro se.* While the right to counsel attaches automatically, is self-executing, and persists until affirmatively waived, *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir.1982) (en banc), the right to proceed *pro se* must be unequivocally[8] and timely[9] invoked or the right is presumed to be voluntarily forfeited. *State v. Hanson*, 138 Ariz. 296, 300, 674 P.2d 850, 854 (App.1983) (holding that a defendant is "deemed to have voluntarily waived" the right to proceed *pro se* when the defendant fails to make an unequivocal and timely assertion of that right).[10] And although competence to waive the constitutional right to counsel is the primary restriction on the free-exercise of self-representation, under certain circumstances, concerns of delay and disruption may allow the court to limit the assertion and exercise of the right. *See McKaskle*, 465 U.S. at 173, 104 S.Ct. 944 (stating *Faretta* held that Sixth Amendment right to conduct own defense depends on constitutionally waiving counsel and being "able and willing to abide by rules of procedure and courtroom protocol"); *Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. 2525 (stating "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct" (citing *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970))); *Gunches*, 225 Ariz. at 24, ¶ 9, 234 P.3d at 592 ("[A] mentally incompetent defendant cannot validly waive the right to counsel." (citation omitted)); *De Nistor*, 143 Ariz. at 413, 694 P.2d at 243 (affirming court's refusal to allow defendant to waive counsel when there were several de-

**7.** *See State v. Rickman*, 148 Ariz. 499, 503, 715 P.2d 752, 756 (1986) (stating "difference lies in the defendant's right to be informed" about right to counsel); *State v. Hanson*, 138 Ariz. 296, 300, 674 P.2d 850, 854 (App.1983) (stating unlike right to attorney, no obligation to tell a defendant there is a right to proceed *pro se* ). *But see* Ariz. R.Crim. P. 4.2(a)(3) cmt. amended 2007 (stating at an initial appearance "(3) requires notice to a defendant of ... right to waive representation by counsel under Rule 6.1(c)").

**8.** An assertion of the right must be unequivocal, "[o]therwise, a defendant can claim a violation of his rights on appeal whether he defended himself or had an attorney." *Hanson*, 138 Ariz. at 300, 674 P.2d at 854.

**9.** An assertion of the right is timely if it is made before a jury is empanelled. *Lamar*, 205 Ariz. at 435–36, ¶ 22, 72 P.3d at 835–36; *see also Cornell*, 179 Ariz. at 326, 878 P.2d at 1364.

**10.** For purposes of clarity, we refer to the failure to properly assert the right to self-representation as forfeiture rather than waiver. *See United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (stating forfeiture is failure to make timely assertion of the right rather than an intentional abandonment).

lays in proceedings and requests for new counsel; witnesses would be inconvenienced); *Martin*, 102 Ariz. at 146, 426 P.2d at 643 (ongoing in-court misconduct); *State v. Whalen*, 192 Ariz. 103, 108, 961 P.2d 1051, 1056 (App.1997) (holding no error in revoking *pro se* right where defendant was warned continued behavior would result in loss of right); *State v. Thompson*, 190 Ariz. 555, 557, 950 P.2d 1176, 1178 (App.1997) (determining it was not an abuse of discretion to deny motion to proceed *pro se* coupled with request for continuance made day of trial); *State v. Brooks*, 161 Ariz. 177, 180–81, 777 P.2d 675, 678–79 (App.1989) (finding no abuse of discretion to deny self-representation motion because after state rested change in representation would be disruptive). *But see State v. Mott*, 162 Ariz. 452, 461, 784 P.2d 278, 287 (App.1989) (determining obstinate and disrespectful conduct did not require trial court to revoke the defendant's waiver of counsel).

¶ 18 In the case of an untimely or equivocal assertion, *"whether [a] defendant will be given the opportunity to waive counsel* is within the discretion of the trial court." *De Nistor*, 143 Ariz. at 413, 694 P.2d at 243 (emphasis added); *see also Cornell*, 179 Ariz. at 326, 878 P.2d at 1364; *Brooks*, 161 Ariz. at 180–81, 777 P.2d at 678–79. If an assertion is timely and unequivocal, however, the only determinations that must be made are whether the defendant is competent to waive constitutional rights and knowingly, intelligently, and voluntarily waives counsel. The law requires no more. *See State v. Wassenaar*, 215 Ariz. 565, 572, ¶ 21, 161 P.3d 608, 615 (App.2007) ("[C]ourt conducted the appropriate colloquy and informed Defendant of the rights and privileges he would relinquish and the disadvantages of self-representation. Nothing more was required.").

¶ 19 If a defendant makes a timely and unequivocal request to proceed *pro se*, the court must grant that request if it finds the request was knowingly, intelligently, and voluntarily made. *Lamar*, 205 Ariz. at 435–36, ¶ 22, 72 P.3d at 835–36 (stating upon compliance with requirements request to proceed *pro se* should be granted (citing *Armant v. Marquez*, 772 F.2d 552, 555 (9th

Cir.1985))); *Cornell*, 179 Ariz. at 324, 878 P.2d at 1362 (same); *see also State v. Henry*, 189 Ariz. 542, 548, 944 P.2d 57, 63 (1997) ("If timely, the request ordinarily should be granted."); *Martin*, 102 Ariz. at 145, 426 P.2d at 642 (stating once defendant waives counsel and court determines waiver is effective, court lacks authority to thrust counsel on defendant). *See also infra* Section III.

¶ 20 McLemore's motion was indisputably timely and unequivocal. Therefore, unless he was not competent to waive counsel or there was evidence he would not exercise appropriate conduct in his own representation, his motion should have been granted after the necessary colloquy.

## III. Constitutional waivers of counsel, due process, and *Faretta* violations.

### A. Basic constitutional principles.

¶ 21 A timely and unequivocal assertion of the right to proceed *pro se* requires the court to ascertain whether the defendant has the capacity, and chooses, to make a knowing, intelligent, voluntary, and thus, constitutional waiver of the right to counsel. Ariz. R.Crim. P. 6.1(c); *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525; *Carnley v. Cochran*, 369 U.S. 506, 515–16, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Lamar*, 205 Ariz. at 435–36, ¶ 22, 72 P.3d at 835–36 (stating that after a request to proceed *pro se*, "a defendant must voluntarily and knowingly waive his right to counsel"); *De Nistor*, 143 Ariz. at 412, 694 P.2d at 242; *see also Westbrook v. Arizona*, 384 U.S. 150, 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966) (stating defendant must not only desire to represent himself, but also be competent to waive his right to counsel; court is required to make a waiver determination); *Martin*, 102 Ariz. at 145, 426 P.2d at 642 (stating defendant's multiple demands "alone ... should not be determinative of a waiver of assistance [of] counsel"). A constitutional waiver must be apparent from the record. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525; *Carnley*, 369 U.S. at 516, 82 S.Ct. 884; *State v. Doss*, 116 Ariz. 156, 160, 568 P.2d 1054, 1058 (1977) (citing *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); *see also State v. Avila*, 127

Ariz. 21, 25, 617 P.2d 1137, 1141 (1980) ("[I]n any proceeding involving the surrender of Constitutional rights, it must appear from the record that the waiver was knowingly, intelligently and voluntarily made.").

¶ 22 The case law requires active court involvement to determine if a criminal defendant has constitutionally waived the right to counsel. To constitutionally waive counsel, the defendant should first be warned of the risks of self-representation so the defendant "knows what [the defendant] is doing and [the] choice is made with open eyes." *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). Decades after *Faretta*, the Supreme Court and Arizona courts continue to reaffirm that a defendant must be warned of the hazards of self-representation before the court may conclude a waiver of counsel is intelligent and meets constitutional standards. *See Iowa v. Tovar*, 541 U.S. 77, 88–89, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004); *Patterson v. Illinois*, 487 U.S. 285, 298, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988) (stating that warnings of the risks of proceeding to trial without counsel must be rigorously conveyed); *State v. Dann*, 220 Ariz. 351, 360, ¶ 24, 207 P.3d 604, 613 (2009) ("A prospective *pro se* litigant must understand (1) the nature of the charges against him, (2) the dangers and disadvantages of self-representation, and (3) the possible punishment upon conviction."); *Binder*, 170 Ariz. at 520, 826 P.2d at 817 (stating that to "meet [the] criteria" and constitutionally waive counsel, defendant "must be 'made aware of the dangers and disadvantages of self-representation'" (citation omitted)); *State v. Raseley*, 148 Ariz. 458, 462, 715 P.2d 314, 318 (App.1986) (remanding for determination about whether the defendant was aware of risks when he waived counsel).[11]

¶ 23 Failing to engage in a particular colloquy with a defendant, failing to warn a defendant of "every possible strategic consideration" of proceeding *pro se*, or failing to have the defendant sign the written waiver provided for by Rule 6 is not necessarily reversible error.[12] However, an erroneous denial of the right to proceed *pro se* by refusing to permit a defendant to waive counsel violates a defendant's constitutional rights and is reversible and structural error. *Dallio v. Spitzer*, 343 F.3d 553, 561–62 (2d Cir. 2003) (interpreting a *Faretta* violation as the denial of the right to waive counsel); *Torres*, 208 Ariz. at 343–44, ¶ 11, 93 P.3d at 1059–60 (structural error). In *Martin*, the court denied a motion to proceed *pro se* for the irrelevant reason that the court thought the

---

11. *Faretta* does not require the exchange of a scripted colloquy or particular set of warnings because "[t]he information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors. . . ." *Tovar*, 541 U.S. at 88, 124 S.Ct. 1379 (citing *Johnson*, 304 U.S. at 464, 58 S.Ct. 1019). This includes a defendant's "education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.; see also Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (stating intelligent waiver depends on particular facts and circumstances surrounding the case); *Martin*, 102 Ariz. at 146, 426 P.2d at 643 ("All factors relating to the determination of whether the defendant knew exactly what he was doing when he waived . . . are relevant."); *Binder*, 170 Ariz. at 520, 826 P.2d at 817 (stating court can consider background, experience and understanding); *United States v. Gerritsen*, 571 F.3d 1001, 1008 (9th Cir.2009) (stating waiver must be evaluated in light of whole record; focus on what the defendant understood when choosing to proceed *pro se* rather than what the court told him).

12. *Dann*, 220 Ariz. at 360, ¶ 24, 207 P.3d at 613 (citing *Cornell*, 179 Ariz. at 324, 878 P.2d at 1362); *see also Tovar*, 541 U.S. at 91–92, 124 S.Ct. 1379; *Wassenaar*, 215 Ariz. at 572, ¶¶ 21–23, 161 P.3d at 615 (determining court did not need to inform Defendant that he would not be allowed to testify through narrative); *Gerritsen*, 571 F.3d at 1011–12 (finding waiver of counsel constitutional where court made inquiry and gave warnings, but did not give specific warnings in detail). Nor is the absence of an explicit finding of a knowing, intelligent, voluntary waiver of counsel reversible error where the record as a whole supported a finding of constitutional waiver. *State v. Russell*, 175 Ariz. 529, 532, 858 P.2d 674, 677 (App.1993) (implying a finding of constitutional waiver despite no explicit trial court finding where record strongly supported waiver of counsel). And it is not reversible error to fail to obtain a written waiver pursuant to Rule 6 of our criminal rules. *State v. Evans*, 125 Ariz. 401, 403, 610 P.2d 35, 37 (1980) (determining absence of written waiver pursuant to Rule 6 is not reversible error and absence of explicit findings are not reversible error where record is adequate to find constitutional waiver).

defendant would be better represented by counsel. Our supreme court recognized:

> [to] indulge in every reasonable presumption against a waiver ... in no way implies that [the court] should refuse to consider the defendant's request altogether. Otherwise the constitutional right to defend oneself if he intelligently and competently chooses would be illusory.

*Martin,* 102 Ariz. at 145, 426 P.2d at 642; *see also Binder,* 170 Ariz. at 520, 826 P.2d at 817 (vacating and remanding where record was clear that superior court abused discretion by denying *pro se* request because it "did not believe the defendant could do an adequate job").

¶ 24 Thus, the trial court is charged with a "protecting duty" to determine if a waiver of counsel is effective.

> The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.

*Westbrook,* 384 U.S. at 150, 86 S.Ct. 1320 (quoting *Johnson,* 304 U.S. at 465, 58 S.Ct. 1019); *State v. DeLuna,* 110 Ariz. 497, 500, 520 P.2d 1121, 1124 (1974); *see also* Ariz. R.Crim. P. 6.1(c) cmt. ("(c) provides the standards for waiver of the rights to counsel.... It adopts the constitutional standard set down in *Johnson* ...."); *Carnley,* 369 U.S. at 515, 82 S.Ct. 884 (stating *Johnson* principles are "equally applicable to asserted waivers of the right to counsel in state criminal proceedings").[13]

¶ 25 McLemore's motion made plain the relief requested, was indisputably made long before trial and was unequivocal.[14] Accordingly, McLemore's motion triggered the court's protective duty to ascertain whether his waiver of counsel was intelligent, knowing and voluntary. Absent any indication that he was withdrawing or abandoning his motion to proceed *pro se,* McLemore was entitled to the opportunity to make a constitutional waiver of counsel.

**B. McLemore's motion properly asserted his right to self-representation and there is no evidence that he withdrew or waived his motion.**

¶ 26 The record reveals that despite ample time before trial and hearings on other pretrial matters, no inquiry was ever made into McLemore's motion. There is also no evidence to suggest that McLemore affirmatively withdrew the motion. *Compare Lamar,* 205 Ariz. at 436, ¶ 24, 72 P.3d at 836 (determining that after inquiry defendant stated he did not want to represent himself and therefore effectively withdrew his *pro se* request), *with State v. Vann,* 280 Kan. 782, 127 P.3d 307, 316–17 (2006) (determining that defendant did not abandon *Faretta* motion when he told the court that his counsel had advised him not to raise it). Thus, McLemore's motion remained pending on the court's docket throughout the case.

¶ 27 Nor can we agree with the State's argument that McLemore waived his right to represent himself by acquiescing in counsel representing him when the court had not ruled on his motion and McLemore had not filed another motion to represent himself. A waiver of the right to self-representation can only occur after a court first determines that the request to waive counsel is constitutionally sufficient. This is because the right to represent oneself is one of the few constitutional rights which cannot be exercised without court approval. As such, that right remains incipient or dormant until the court rules that the waiver of counsel has been intelligently, voluntarily, and knowingly made. Once the court approves the request to proceed *pro se,* the defendant can later impliedly waive that exercised right by agreeing to or not objecting to the further

---

13. The waiver of the constitutional right to representation must be intelligent and competent. *Johnson,* 304 U.S. at 465, 58 S.Ct. 1019.

14. McLemore filed a "Notice to Proceed as Pro Per" requesting permission to proceed *pro per* "[p]ursuant to [t]he U.S. Sixth Amend[ment]."

While McLemore's request was entitled as a notice, it clearly set forth that he wanted to represent himself. As such, we think it is appropriately considered a motion under Rules 16.1 and 35.1 of the Arizona Rules of Criminal Procedure.

representation by counsel.[15] Similarly, once the motion has been denied, the defendant need not renew the motion or take other action to preserve his right. *See Vann,* 127 P.3d at 316–17 (stating once motion has been appropriately made and denied, defendant need not take any further action to reassert request); *Wilson v. Walker,* 204 F.3d 33, 37 (2d Cir.2000) (stating after motion is conclusively denied, defendant need not continually renew request, make fruitless motions, or forego cooperation with defense counsel); *Orazio v. Dugger,* 876 F.2d 1508, 1512 (11th Cir.1989) (explaining that once denied, the defendant need not continually renew his request to represent himself or make fruitless motions).

¶ 28 We cannot agree with the State that McLemore waived his right or did not preserve it for appeal simply by not pursuing the motion or by reminding the court of the motion. The right to proceed *pro se* has not ripened or become effective until the court has granted the request. So McLemore's later conduct allowing counsel to appear on his behalf cannot amount to a waiver of the dormant right to proceed *pro se.* The State relies on *State v. Lujan,* 136 Ariz. 326, 328, 666 P.2d 71, 73 (1983), which dealt with waiver by failing to remind the court of a pending motion in limine. In contrast, here we are dealing with a fundamental constitutional right of self-representation which the defendant cannot exercise until the court undertakes the necessary colloquy to ensure the waiver of counsel is constitutionally valid.

**B. McLemore abandoned his motion.**

¶ 29 Thus, the only question is whether McLemore is deemed to have abandoned his

motion by failing to remind the court of his pending motion when he had an opportunity to do so. We have found one case addressing abandonment in this context and it held that the defendant abandoned his *Faretta* motion by not pursuing it. *Kenner,* 223 Cal. App.3d at 62, 272 Cal.Rptr. 551. We agree with much of the reasoning in *Kenner,* although we conclude that a failure to remind the court of a pending *Faretta* motion just because the defendant has an opportunity to do so does not amount to *per se* abandonment. Rather, we must consider the totality of the circumstances to determine whether a defendant has abandoned his or her *Faretta* motion. While in some cases such consideration might require further evidentiary development about the defendant's intent and credibility, the record here is sufficient to conclude McLemore abandoned his *Faretta* motion.

¶ 30 In *Kenner,* the defendant made a timely and unequivocal *Faretta* request and the trial court set the matter for hearing. *Id.* at 58, 272 Cal.Rptr. 551. Kenner did not appear at the next several hearings because he was in custody on other charges and the court continued the matter. *Id.* At the next hearing at which Kenner appeared, his counsel stated that the court could defer the *Faretta* motion until another pretrial hearing. The court continued the motion and reset the trial date. Kenner did not mention his *Faretta* motion. *Id.* at 59, 272 Cal.Rptr. 551. At the next three hearings, including a pretrial conference, Kenner did not mention his *Faretta* request. *Id.* At what was apparently the last pretrial conference, Kenner

---

15. Federal law explicitly acknowledges waiver by conduct after the motion to proceed *pro se* has been granted. *McKaskle,* 465 U.S. at 182, 104 S.Ct. 944 (stating invitation, acquiescence, or solicitation of certain types of participation by standby counsel undermines protestations that counsel interfered); *see also Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. 2525. In contrast, under Arizona law, once the request to proceed *pro se* has been *granted,* a defendant must unequivocally revoke the right if he wants to be represented by counsel. *State v. Gonzales,* 181 Ariz. 502, 510, 892 P.2d 838, 846 (1995) (stating defendant did not withdraw his waiver of counsel by asking for advisory counsel and court cannot interfere with self-representation right without

an unequivocal waiver); *Rickman,* 148 Ariz. at 503–04, 715 P.2d at 756–57 (stating that a defendant's request that advisory counsel play more active role does not waive the right to self-representation once the right attaches); Ariz. R.Crim. P. 6.1(e) (stating defendant can withdraw waiver of right to counsel at any time); Ariz. R.Crim. P. 6.1(e) cmt. ("[D]efendant's right to withdraw a waiver of counsel is unlimited."). *But see State v. Gomez,* 211 Ariz. 494, 505, ¶ 52, 123 P.3d 1131, 1142 (2005) ("Because [the defendant] allowed advisory counsel to give the closing argument in the penalty phase and was represented by counsel during arguments on his motion for a new trial and on appeal, he revoked his waiver of counsel.").

was present and the court considered other pretrial motions. When the court stated it did not need to do anything else, Kenner remained silent despite the court never having considered the *Faretta* motion. *Id.* Kenner never raised his motion again until his opening brief on appeal. *Id.*

¶ 31 The California Court of Appeal rejected Kenner's argument that he had not abandoned his motion to represent himself. The court stated the issue and its decision succinctly:

> From this record, it is apparent that the motion was not acted upon due to the confusion caused by appellant's changing custody situation. Thus the case presents a stark judicial choice: who should bear the burden of the omission—the trial court or the mysteriously silent defendant? By urging that the judgment must be reversed, appellant would absolve himself of any vestige of responsibility. That position is not justified by either the law or the facts.

*Id.* After noting that when the circumstances indicate an abandonment of the *Faretta* motion the court need not undertake a dialogue with the defendant to ascertain his intent, *id.* at 61, 272 Cal.Rptr. 551, the court explained why an abandonment had occurred:

> In the present case, the record establishes that appellant had ample opportunity to call the court's attention to the neglected *Faretta* motion, but did not .... [H]is conduct throughout the proceedings indicated unequivocally that he agreed to and acquiesced in being represented by counsel. Although he spoke more than once, he said and did nothing suggesting any dissatisfaction with counsel's representation.
>
> ....
>
> *Defendants who sincerely seek to represent themselves have a responsibility to speak up. The world of the trial court is busy and hectic, and it is to be expected that occasionally a court may omit to rule on a motion. When that happens, as here, we believe it is reasonable to require the defendant who wants to take on the task of self-representation to remind the court of the pending motion.* Therefore, we hold

that on this record, where appellant had both time and opportunity to follow up on his request for a hearing on his *Faretta* motion, and failed to do so, he must be deemed to have abandoned or withdrawn that motion.

*Id.* at 62, 272 Cal.Rptr. 551 (emphasis added); *cf. Wilson*, 204 F.3d at 38–39 (holding that request to proceed *pro se* was abandoned when defendant did not again raise motion in later proceedings dealing with change of counsel and court had the impression that the issue was still open).

■ ¶ 32 We agree with much of the reasoning of *Kenner*. However, to the extent it espoused a *per se* test for abandonment based on the defendant's opportunity to remind the court of a pending *Faretta* motion, we disagree at least when, as here, the record does not reflect any discussion or consideration by counsel, the defendant or the court of the pending motion. In *Kenner*, the parties, the attorneys, and the court were well aware that a *Faretta* motion had been filed and considered. Whereas here, McLemore sent copies of his request to his co-defendant's prior attorney but apparently not to his own attorney. While the record reflects that McLemore also sent a copy of the motion to the then presiding trial judge, shortly thereafter the case was transferred to two other judges, who might have not seen the motion on file. Thus, unlike *Kenner*, in this case there was never any proceeding, aborted or otherwise, on the *Faretta* motion. *See Kenner*, 223 Cal.App.3d at 58–59, 272 Cal. Rptr. 551.

¶ 33 It is also unclear from the record whether McLemore understood his motion was pending or if he had simply assumed the motion was denied without any colloquy. As in *Kenner* we do not have any indication that McLemore was gaming the system by waiting to remind the court of the motion after he was convicted. *See id.* at 62, 272 Cal. Rptr. 551. McLemore did not raise this issue in the superior court after his conviction or on appeal.

¶ 34 A rule that determines a failure to remind the court of a pending *Faretta* motion is *per se* abandonment is also in tension with

the principle that once such a motion is granted, a defendant must take affirmative steps to waive his right to proceed *pro se*. *See supra* Footnote 15.[16]

¶ 35 Rather, a consideration of the totality of the circumstances to determine whether a defendant intended to abandon a *Faretta* motion when the superior court fails to consider and rule on the motion better protects a defendant's constitutional rights and the criminal justice system. It is also consistent with the totality of circumstances we use to determine if the colloquy to ensure the waiver of counsel is constitutional. *See supra* Footnote 12. Informative factors include but are not limited to a consideration of the defendant's opportunities to remind the court of a pending motion, defense counsel's awareness of the motion, any affirmative conduct by the defendant that would run counter to a desire for self-representation, whether the defendant waited until after a conviction to complain about the court's failure to rule on his or her motion (thus indicating the defendant was gaming the system), and the defendant's experience in the criminal justice system and with waiving counsel.

¶ 36 On this record, no evidentiary hearing is required to determine that McLemore abandoned his *Faretta* motion. McLemore had both the opportunity and ability to ask the court to rule on his motion within several weeks and several months after filing the motion. There was a hearing before the court shortly after he filed his motion which McLemore attended and he did not raise the issue. There were other conferences before the superior court on other issues which McLemore attended with his counsel and McLemore did not remind the judge he wanted to represent himself or that he objected to being represented by his appointed counsel. While occurring ten months after the filing of the motion, McLe-

more attended a hearing requested by his counsel to determine whether counsel should continue to represent McLemore because of a potential conflict. Except for the delay, this would have been the perfect opportunity for McLemore to ask the court the status of his motion to represent himself, but McLemore remained silent. Nor did McLemore ever object to the court about the conduct of his counsel. Absent any evidence that McLemore was counseled by his attorney to not pursue the motion, which could only be determined in proceedings pursuant to Rule 32 of the Arizona Rules of Criminal Procedure, we conclude that McLemore's failure to act reflects an intent to abandon his motion to represent himself.

¶ 37 This is not to say that a court may simply overlook a *Faretta* motion and it will be deemed abandoned by passage of time. At some point, the delay is long enough that it could be effectively deemed an impermissible denial of the motion resulting in a *per se* abuse of discretion and reversible error. *See generally e.g., Martin,* 102 Ariz. at 145, 426 P.2d at 642 (refusing to consider request renders the right to proceed *pro se* illusory); *Brown,* 665 F.2d at 612 (noting decision "should not be read to imply that a trial court may unduly defer a ruling on a firm request by defendant to represent himself in the hopes the defendant may change his mind").

¶ 38 We do not reach this issue here, however, because the time between McLemore's motion and the next two hearings which he attended and failed to remind the court of his motion was relatively short. McLemore filed the motion in late October 2007 and attended a hearing in late November 2007, not raising the issue. McLemore attended another hearing in early January 2008, and again did not raise the issue. Underscoring this con-

---

16. A *per se* rule of abandonment also seems contrary to another procedure requiring a colloquy. When a defendant wants to stipulate to prior convictions, we require the superior court to conduct a colloquy with the defendant to ensure the stipulation is intelligent, knowing, and voluntary. Ariz. R.Crim. P. 17.6. When a court fails to conduct that colloquy, however, we will not reverse the conviction or sentence unless we can say based on the record or after an evidentiary

hearing that the defendant would not have admitted the prior conviction but for the failure to conduct the necessary colloquy. *State v. Morales,* 215 Ariz. 59, 61–62, ¶¶ 10–13, 157 P.3d 479, 481–82 (2007). In that procedure, we effectively review the totality of the circumstances rather than impose a *per se* rule. The same totality of the circumstances should be examined here before we can say a defendant abandoned his or her pending *Faretta* motion.

clusion is the fact that McLemore did not raise the issue of his *Faretta* motion in August 2008 when the court held a hearing regarding the substitution of counsel.

¶ 39 Despite our conclusion, we remind and encourage trial courts to promptly rule on defendants' motions to represent themselves to avoid the defendant incorrectly assuming the motion has somehow been denied when the defendant wants to pursue the right of self-representation. Moreover, such a delay places the defendant in a difficult position because the defendant might feel the need to work with appointed counsel but that cooperation might be deemed to be an abandonment of the defendant's *Faretta* motion.

## CONCLUSION

¶ 40 For the reasons stated, we affirm McLemore's convictions and sentences. Upon the filing of this decision, counsel shall inform McLemore of the status of the appeal and his options. Defense counsel has no further obligations, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). On the Court's own motion, McLemore may file a *pro se* motion for reconsideration or a *pro se* petition for review within thirty days of this decision.

CONCURRING: PHILIP HALL, Presiding Judge and PATRICIA A. OROZCO, Judge.